```
        IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                HOT SPRINGS DIVISION
```

CHERYL LYNN PRICKETT, as Executrix                    PLAINTIFF
of the Estate of Shirley Harmor, Deceased,
on Behalf of the Estate and Beneficiaries
of Shirley Harmor

v.                     CASE No. 6:07-CV-6050

HOT SPRING COUNTY MEDICAL CENTER;
ALTIMUS RAY BOLLEN, M.D., Individually,
HOT SPRING DIAGNOSTIC CLINIC, P.A., an
Arkansas Corporation;
LARRY BRASHEARS, M.D., Individually, and
L.B. BRASHEARS, M.D., LTD., an Arkansas
Corporation, Hudson Healthcare as liability
insurer for HOT SPRING COUNTY MEDICAL CENTER
and JOHN DOES 1-5                                    DEFENDANTS

## ORDER

Before the Court are the Motion to Dismiss on Behalf of Separate Defendants Altimus Ray Bollen, M.D., Hot Spring Diagnostic Clinic, P.A., Hot Spring County Medical Center and Hudson Healthcare (Doc. 14), Larry B. Brashers, M.D. and L.B. Brashears, M.D., LTD.'s Motion to Dismiss Amended Complaint (Doc. 17), and Plaintiff's Consolidated Response to Defendants' Motion to Dismiss (Doc. 23), and Brief in Support (Doc. 24).

Plaintiff, as Executrix of the Estate of Shirley Harmor, deceased, filed an action pursuant to the Emergency Medical Treatment and Active Labor Act (42 U.S.C. § 1395dd) ("EMTALA" and also known as the "Anti-Patient Dumping Act") seeking damages for personal injuries and declaratory and injunctive

relief against the Defendants for failing to provide proper and appropriate medical services as required by EMTALA and state law medical malpractice tort claims. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**.

**A. Background**

On the morning of August 13, 2005, the Plaintiff's decedent, Shirley Harmor, ("Mrs. Harmor") was transported to the Hot Spring County Medical Center in Malvern, Arkansas, where she received an examination and treatment.  She was admitted to the emergency room at approximately 8:03 a.m., and seen by Dr. Bollen and several emergency department nurses who provided care and treatment.  Mrs. Harmor complained of left lower abdominal pain which began the night before and a cough which had been present for an extended period.  The nursing staff took Mrs. Harmor's vital signs, performed blood work and sent her for an x-ray of her stomach, but there was no x-ray taken because she was unable to stand.  Dr. Bollen diagnosed Mrs. Harmor as suffering from abdominal pain secondary to muscular pain, syncopal episode with generalized weakness and bronchitis. She was given medication and ordered admitted to the hospital, where her care was transferred to Dr. Brashears. (Doc. 2) On August 14, 2005, at approximately 1:00 p.m., Mrs. Harmor was transferred by Pro-Med Ambulance to National Park Medical Center in Hot Springs, Arkansas, a hospital equipped to handle her

deteriorating health. As she was arriving at the hospital, Mrs. Harmor suffered a cardiac event. According to the Plaintiff's Amended Complaint, she was found to be suffering from shock, hypothermia, hypotension, left shift with leukocytosis, leukopenia, coagulopathy with DIC, left-sided pneumonia, anuric renal failure, hyperglycemia, secondary to sepsis, and respiratory cardiac arrest requiring ventilatory support. Mrs. Harmor was kept on supportive care and ventilatory support until 7:45 p.m., when she was pronounced dead. (Doc. 2)

The Plaintiff filed this Complaint on July 16, 2007, under EMTALA (42 U.S.C. § 1395dd) seeking damages for personal injuries and declaratory and injunctive relief against the Defendants for failing to provide proper and appropriate medical services as required by EMTALA and state law medical malpractice tort claims. The separate Defendants each filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Doc. 14 & 17) They assert that EMTALA does not apply to the facts alleged in the Plaintiff's Complaint and the Plaintiff has failed to state a claim upon which relief can be granted and this Court lacks subject matter jurisdiction. Specifically, the Defendants argue that the protections offered by EMTALA end once a patient is admitted to the hospital, and that EMTALA does not provide for a private cause of action against an individual physician defendant.

**B. Standard of Review**

In determining whether a motion to dismiss should be granted, the court must test the legal sufficiency of a complaint. A motion to dismiss should only be granted if it appears from the face of the complaint that the plaintiff cannot prove any set of facts to support his claims for relief. *Schaller Tel. Co. V. Golden Sky Sys., Inc.,* 298 F.3d 736, 740 (8th Cir. 2002). In considering a motion to dismiss, the Court takes all allegations in the complaint as true and views the facts most favorably to the non-moving party. *Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 405 (8th Cir. 1999).

**C. Discussion**

    **1. Federal Law Claim**

Plaintiff alleges that the acts and omissions of the hospital and medical staff violate EMTALA as codified at 42 U.S.C. § 1395dd. Specifically, the Plaintiff asserts that the hospital and medical staff violated the provisions of EMTALA governing patient transfers and stabilization. The Eighth Circuit has addressed the scope of EMTALA and stated that "the purpose of the statute was to address a distinct and rather narrow problem – the 'dumping' of uninsured, underinsured, or indigent patients by hospitals who did not want to treat them." *Summers v. Baptist Medical Center Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir. 1996). "EMTALA is not a federal malpractice statute and it does not set a national emergency health care

standard; claims of misdiagnosis or inadequate treatment are left to the state malpractice arena." *Id.*, at 1137. The Eighth Circuit has held that EMTALA does not provide a cause of action for damages against an individual physician. "Congress expressly created a private remedy which by its plain language is limited to a cause of action against the hospital." *King v. Ahrens, 16 F.3d 265, 270-71 (8th Cir. 1994).* Accordingly, the EMTALA causes of action against both Dr. Bollen and Dr. Brashears are dismissed for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.

EMTALA states that if any individual comes to the emergency department of a participating[1] hospital and a request is made for examination or treatment for a medical condition, the hospital must provide an appropriate medical screening within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists. 42 U.S.C. § 1395dd(a). If the hospital determines that an emergency medical condition exists, the hospital must provide either (A) within the staff and facilities available at the hospital, for such further medical examination

---

[1] A participating hospital is a hospital which has an emergency department and has entered into a provider agreement with the Secretary of Health and Human Services to accept medicare and medicaid payments. Hot Spring County Medical Center is a participating hospital for EMTALA purposes.

and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section. 42 U.S.C. § 1395dd(b). An EMTALA claim would encompass the following elements: (1) defendant has both a Medicare provider agreement with the Secretary of Health and Human Services and an emergency room or emergency department; (2) plaintiff went to the defendant's emergency room or emergency department; (3) plaintiff requested examination or treatment; (4) plaintiff had an emergency medical condition; (5) defendant did not provide plaintiff with an appropriate medical screening examination; and (6) as a direct result of the conduct of defendant, plaintiff suffered personal harm. *Hunt ex rel. Hunt v. Lincoln County Mem'l Hosp.*, 317 F.3d 891, 893 (8th Cir. 2003).

The Plaintiff alleges that the Defendants failed to properly screen, stabilize and transfer Mrs. Harmor pursuant to EMTALA, and therefore brings this cause of action against the hospital. Specifically, she alleges that the treating physician did not perform an appropriate medical screening resulting in the failure to diagnose the emergency medical condition of Mrs. Harmor. The Defendants argue that Mrs. Harmor was properly screened and admitted into the hospital for treatment, and the hospital's EMTALA obligations ended at that time. To support this argument, the Defendants refer to 42 C.F.R. § 489.24, the

Department of Health and Human Services' interpretation of the EMTALA provisions, which state that a hospital's obligation under EMTALA ends once the hospital admits an individual as an inpatient for further treatment. The Plaintiff contends that this Court should not consider 42 C.F.R. §489.24 because it is merely an interpretative rule, and cites a U.S. District Court case from Puerto Rico which held that EMTALA protection should continue even after a patient is admitted into a hospital for treatment. However, this Court will follow the clearly stated interpretation of the EMTALA provisions as detailed in 42 C.F.R. §489.24, as well as decisions from the Fourth, Ninth, and Eleventh Circuits, in holding that EMTALA's protections end when an individual is admitted for inpatient treatment. *See Bryant v. Rectors and Visitors of The University of Virginia,* 95 F.3d 349 (4th Cir. 1996); *Bryant v. Adventist Health Systems/West,* 289 F.3d 1162 (9th Cir. 2002); and *Harry v. Marchant,* 291 F.3d 767 (11th Cir. 2002).

EMTALA requires that every covered hospital emergency department provide "an appropriate medical screening" to any individual who seeks assistance at the emergency room to discover any emergency medical conditions which might exist. *King v. Ahrens,* 16 F.3d 265, 270-71 (8th Cir. 1994). If an emergency medical condition is discovered, the hospital must stabilize the patient before discharging or transferring them. *Summers v. Baptist Medical Center Arkadelphia*, 91 F.3d 1132,

1136 (8th Cir. 1996). EMTALA is implicated only when individuals who are *perceived to have* the same medical condition receive disparate treatment; it is not implicated whenever individuals who turn out in fact to have had the same condition receive disparate treatment. The Act would otherwise become indistinguishable from state malpractice law. As a result, when an exercise in medical judgment produces a given diagnosis, the decision to prescribe a treatment responding to the diagnosis cannot form the basis of an EMTALA claim of inappropriate screening. *Id.* at 1137. A hospital must have actual knowledge of an individual's un-stabilized emergency medical condition if a claim under EMTALA is to succeed. *Id.*

The Plaintiff concedes in her Complaint that the treating physicians and nursing staff performed an initial medical screening on Mrs. Harmor; however, she contends that it was insufficient, and that they were negligent in failing to diagnose the existence of her emergency medical condition. An appropriate screening is properly determined not by reference to particular outcomes, but by reference to the patient's presenting condition and the hospital's standard screening procedures. *Brodersen v. Sioux Valley Memorial Hospital*, 902 F. Supp. 931, 941 (1995). A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients

and provides that level of screening uniformly to all those who present substantially similar complaints. *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1192 (1st Cir. 1995).

There is no dispute that the treating physicians and nursing staff performed an examination of Mrs. Harmor, which included vitals, blood work, and an attempt to take x-rays, based on the complaints she made.  It is also undisputed that the hospital failed to diagnose the emergency medical condition of Mrs. Harmor, as stated in Plaintiff's complaint.  EMTALA applies only if "the hospital determines that the individual has an emergency medical condition..." *Summers v. Baptist Medical Center Arkadelphia*, 91 F.3d 1132, 1136 (8th Cir. 1996).  Dr. Bollen diagnosed Mrs. Harmor with abdominal pain secondary to muscular pain, syncopal episode with generalized weakness and bronchitis, all non-emergent conditions for which he admitted her to the hospital for treatment.  The Plaintiff has not shown that the medical screening was disparate to that which any patient with the same complaints would be entitled to, regardless of their insurance status or ability to pay.

Following Eighth Circuit case law, this Court finds that the hospital did complete an appropriate medical screening as required by EMTALA and that EMTALA stabilization and transfer requirements only apply to patients in which the hospital has determined to have an existing emergency medical condition. Here, Mrs. Harmor was diagnosed with a non-emergent medical

condition and admitted to the hospital for treatment, at which time her protections under EMTALA ended. The Plaintiff's allegations of negligence for failure to properly diagnose Mrs. Harmor's conditions can be addressed in a state malpractice claim. This Court finds that EMTALA does not apply to the claims made by the Plaintiff and therefore, it is not necessary to reach the issue of whether the transfer or stabilization was appropriate under EMTALA. Accordingly, the EMTALA claim against the Defendants is dismissed for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.

### 2. State Law Claims

The Defendants also argue that the Plaintiff's state law claims (Counts II, III, and IV of the Complaint) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Court has dismissed the Plaintiff's EMTALA claim against the Defendants, and the only remaining viable claims in this lawsuit are the state law claims against the Defendants in Counts II, II, and IV of the Complaint. The district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. *Gibson v. Weber,* 433 F.3d 642, 647 (8th Cir. 2006). The Supreme Court has observed that "in the usual case in which all federal-law claims are eliminated before trial, the

**AO72A**
**(Rev. 8/82)**

balance of factors to be considered under the pendent jurisdiction doctrine... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id. at 648.* Therefore, this Court declines to exercise supplemental subject-matter jurisdiction over the state law claims, and they are dismissed without prejudice.

**D. Conclusion**

For the foregoing reasons, the Plaintiff's EMTALA claim against the Defendants is dismissed with prejudice for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the Plaintiff's state law claims against the Defendants are dismissed without prejudice for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Accordingly, Defendants' Motions to Dismiss Plaintiff's Amended Complaint is **GRANTED**.

**IT IS SO ORDERED this 5th day of October, 2007.**

  */s/ Robert T. Dawson*
  Robert T. Dawson
  United States District Judge